# Minnicks v. McKeesport Area School District

*Robert J. Amelio*, for plaintiffs.
*Lewis J. Nescott*, for defendants.

FINKELHOR, *J.*, May 28, 1975—Plaintiff, Jeffrey Minnicks, a minor, by his mother, Nancy Minnicks, has requested this court, sitting in equity, to enjoin the defendant school district, board and superintendent from denying him attendance in school and graduation with his class as a result of an order of said school district excluding plaintiff for the remainder of the school term.

A hearing was held before the court on May 14 and May 20, 1975 and testimony presented by both

plaintiff and defendants. The parties, through counsel, agreed that this hearing would constitute the final hearing in these proceedings.

The issue before the Chancellor is whether the procedure utilized by defendant school district, in excluding plaintiff from school for the duration of the present school term, and particularly the notice of hearing given to plaintiff, was in conformity with the regulations of the Department of Education and the State Board of Education and in compliance with the "due process" prerequisites of the Federal and State Constitutions.

The findings of fact[1] are as follows:

1. Plaintiff Jeffrey Minnicks was and is a senior student at McKeesport Area High School.

2. Defendant is the McKeesport Area School District; the Superintendent of Schools and the McKeesport Area School Board.

3. On Thursday, April 17, 1975, a call was received on the switchboard at McKeesport Area High School in which an anonymous caller stated that there was a bomb in the school building which would "go off" at 2:00 P.M.

4. As on the previous day there had been a similar bomb threat and the building evacuated, the vice principal alerted the Bell Telephone Company and the call was immediately traced to the residence of one Joseph Scire, also a senior student at the high school.

5. The police were notified and plaintiff and two other students were apprehended.

6. Plaintiff and two other students left the high

---

1. The testimony has not been transcribed and the findings of fact are based upon the bench notes of the Chancellor. No briefs or requests for findings were niled by either party.

school in the early morning of April 17th, without permission, and went to the Scire home.

7. After the incident and during the lunch period, plaintiff, who had returned to school, was summoned to the office of Timothy M. Petty, the vice principal of the McKeesport Area High School, wherein minor plaintiff admitted to being solely responsible for the bomb threat. Minor plaintiff was not given any "Miranda" warnings, nor told of his right to retain counsel.

8. On the following day, plaintiff returned to school and, at the time of his fourth class period, was again told to go to the office of the vice principal and was thereupon suspended for an indefinite period. Mrs. Minnicks was notified on both occasions.

9. A letter was allegedly sent by the School District to Mrs. Minnicks and dated April 18, 1975 setting forth notice of an indefinite suspension and that the matter had been referred to the Superintendent of Schools (defendant's Exhibit C). The mother plaintiff denies receiving this letter.

10. On April 29, 1975, a letter dated April 28th was hand-delivered to the Minnicks' residence and received by minor plaintiff and set a hearing before the Discipline Committee of the School Board on April 30, 1975 at 9:30 A.M. and charged plaintiff with "Making a threatening telephone call to the senior high school that a bomb would explode" and "Creating a disturbance detrimental to the orderly operation and safety of the school."

11. This notice further stated that, under the School Code, the Disciplinary Committee could suspend or expel minor plaintiff and that plaintiff had the right to be represented by counsel.

12. Plaintiff did not request a continuance and

the hearing was conducted before a Committee of the Board chaired by Mr. James O'Neill, also the Chairman of the Board. The board members serving on the committee were not the regular members of the Disciplinary Committee. Plaintiff and his mother were present with two character witnesses.

13. By a letter dated April 30th and received by plaintiff the following day and signed by the assistant superintendent of administrative affairs, plaintiff was notified that the committee found him to be guilty, as charged, and that the exclusion was continued for the balance of the school year. Plaintiff was subsequently informed that he could attend summer school and could receive a diploma at the completion of course work in the summer school session.

14. The handbook distributed to the students of McKeesport Area High School includes a section on exclusions from school, the procedures to be used and the possible penalties, and, in addition, an excerpt from the Pennsylvania Penal Code relating to bomb threats (defendant's Exhibit E).

It is plaintiff's position that the procedure used to exclude minor plaintiff from school for the remainder of the present school term, including graduation, did not comply with the regulations of the State Board of Education in that plaintiff was not given adequate notice of the hearing, was unable to obtain counsel, and other procedural safeguards were omitted.

It is defendant's position that all prerequisites of the "Student Bill of Rights" were met and that the hearing and exclusion were in accordance with "due process" of law.

While the issues have been joined by the parties on the "due process" issue, the threshold question

must be whether equity has jurisdiction even though this issue was not raised by counsel.

Section 13-1318 of the Public School Code, as amended by the Act of January 14, 1970, P.L. (1969) 468, 24 P.S. §13-1318, provides as follows:

"Every principal or teacher in charge of a public school may temporarily suspend any pupil on account of disobedienc or misconduct, and any principal or teacher suspending any pupil shall promptly notify the district superintendent, supervising principal, or secretary of the board of school directors. The board may, after a proper hearing, suspend such child for such time as it may determine, or may permanently expel him. Such hearings, suspension, or expulsion may be delegated to a duly authorized committee of the board: March 10, 1949, P.L. 30, art. XIII, §1318."

The legislature did not provide any specific procedure for the implementation of this section nor did it include a procedure for appeal to the courts. However, under section 9, Art. 5 of the Pennsylvania Constitution, a party to an administrative adjudication by an administrative agency has a right of appeal to a court of record: McDonald v. Penn Hills Township School Board, 7 Pa. Commonwealth Ct. 339, 298 A. 2d 612 (1972). This constitutional provision has been implemented by the Local Agency Law of December 2, 1968, P.L. 1133, 53 P.S. §§11302, et seq., which specifically provides for appeals to the Common Pleas Court from local agencies.

However, because of the nature of a pupil suspension or expulsion case, the problem of irreparable harm is an important factor. Absence from school cannot be repaired by money damages or even by a subsequent reinstatement at a future

period. For these reasons, the court will take jurisdiction in order not to further delay a resolution of these proceedings. See Oravetz v. West Allegheny School District, 74 D. & C. 2d 733 (1975).

The issue involved in the instant proceedings is a narrow one. Upon the prudent advice of its experienced solicitor, the McKeesport Area School District instituted careful procedures to insure the student due process. Exclusions over a 10-day period[2] were scheduled before a Disciplinary Committee of the Board, notice included not only a clear statement of the charges but also the rights of the student to obtain counsel, and a statement of findings and the action of the Board was sent to the affected student. In addition, the student handbook (defendant's Exhibit E) included a clear and concise statement of rule infractions and the possible penalty. However, due to problems of scheduling of the Disciplinary Committee, plaintiff and his employed mother received less than 24 hours notice of the date of the "formal hearing."

It has long been an axiom of Pennsylvania law that adjudicatory action cannot be validly taken by any tribunal—whether judicial or administrative—without adequate notice and an opportunity for a fair hearing: Pennsylvania State Athletic Commission v. Bratton, 177 Pa. Superior Ct. 598, 112 A. 2d 422 (1955); Byers v. Public Utility Commission, 176 Pa. Superior Ct. 620, 109 A. 2d 232 (1954).

The requirements of notice and hearing have long governed the employment relationship between the School District and its employes. Under

---

2. The initial 10-day suspension was in compliance with the school code.

recent Supreme Court decisions, similar safeguards have been extended to students: Dixon v. Alabama State Board of Education, 294 F. 2d 150 (CA5 1961), cert. denied 368 U.S. 930 (1961). Pupils facing suspension even of a temporary or limited nature "must be given *some* kind of notice and afforded *some* kind of hearing.": Goss v. Lopez, 43 L. W. 4181, 4185 (January 22, 1975). As summarized by the United States Supreme Court:

"The authority possessed by the State to prescribe and enforce standards of conduct in its schools, although concededly very broad, must be exercised consistently with constitutional safeguards. Among other things, the State is constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that clause.": Goss v. Lopez, supra.

Our own State courts have long adopted similar requirements: Commonwealth ex rel. Hill v. McCauley, 3 Pa. C.C. 77 (1887); Scott v. Trinity Area School District, 53 D. & C. 2d 488 (Washington Co. 1971).

In addition, on September 13, 1974, the Department of Education and the State Board of Education adopted as state policy a code of students rights and responsibilities: 22 Pa. Code 12, to clarify procedures in school exclusion cases. Particularly relevant is section 12.8, which requires a formal hearing before "expulsion"—i.e., all suspensions over 10 days.

Thus, in the instant case, where the exclusion could be characterized as an "expulsion," section 12.8 requires that the hearing be held before the

Board of School Directors or a duly authorized committee of the board and must include: 1) notification of charges in writing sent to the parents or guardian by certified mail and to the student; 2) *sufficient notice of the time and place of hearing;* 3) the right to an impartial tribunal; 4) the right to be represented by counsel; 5) the right to be presented with the names of adverse witnesses; 6) the right to demand that witnesses appear in person and answer questions or be cross-examined; 7) the right to testify and produce witnesses; and 8) a record of the proceedings either by stenographer or tape recorder. (Emphasis supplied.)

Unfortunately, in the instant proceedings, despite the care taken by the school administration to inform the student of charges and to notify him of his rights, the notice was received a scant 24 hours before hearing. The expulsion of a student is an adversary proceeding. The entire purpose of the hearing is to permit the student to defend himself against the proposed action. Failure to give adequate notice must of necessity taint the subsequent hearing. Additionally, the Chancellor is also concerned over the exclusion of plaintiff and his mother from the hearing room while the disciplinary committee and the school administration perused the school files of plaintiff in order to arrive at a penalty in the case. Plaintiff also had a right to review these records, if their consideration affected the ultimate decision of the board.

In ruling that plaintiff was denied adequate notice and hearing, the Chancellor is rejecting other arguments of plaintiff's counsel relating to "Miranda" warnings and the need for a full School Board to act on the disciplinary proceedings. In addition, while under Pennsylvania law plaintiff

has a right to a public education and a diploma when earned, the court does not find a property right in attendance at a high school graduation.

In reaching the conclusion that plaintiff was denied adequate notice, the court is not condoning the alleged activities which led to the disciplinary action.

The court also recognizes the many problems faced by dedicated citizen school boards in maintaining the discipline and order necessary to protect the educational rights of the majority of the students.

However, it is the essence of American constitutional rights that they are extended to all persons irrespective of the charged offense. Accordingly, we find that the "suspension" of April 17th—April 30th was in accordance with the procedural regulations of the State Board of Education, but that 24 hours is inadequate notice of a disciplinary hearing prior to "expulsion."

While this student was "expelled" April 30, 1975, the petition was not filed with the court until May 12th. In order to expedite the case, a hearing was set specially on May 20th—Election Day. While the court is aware that the school term is almost at an end, an appropriate decree will be entered in accordance with this opinion.

## DECREE NISI

And now, May 28, 1975, upon plaintiff's petition for injunction, and after a full hearing, it is hereby ordered, adjudged, and decreed as follows:

1. The above case is remanded to the McKeesport Area School Board to hold a formal hearing in compliance with the Regulations of the State Board

of Education, including adequate notice, and this opinion within 10 days from the date of this Decree.

2. Plaintiff be reinstated as a student in McKeesport Area High School as of the date of this decree and that the student be permitted to immediately make up the course work missed during the period of exclusion, either by tutoring, by attendance at summer school, or any other method to be devised by the parties.

3. The official school record of plaintiff shall be expunged of any record of expulsion in the absence of a hearing as set forth in Paragraph 1 of this decree.

4. The attendance of plaintiff at graduation is within the discretion of the defendant school district.

The above decree shall be final in 30 days.